UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:08-CV-453

| | |
|---|---|
| CLARENCE B. RIDOUT,<br><br>        Plaintiff<br><br>v.<br><br>KEP MORRISVILLE REALTY LLC,<br>a New York limited liability company,<br>        Defendant. | ORDER |

This matter is before the court upon the Motion for Summary Judgment [DE-13] filed by Plaintiff Clarence B. Ridout ("Plaintiff Ridout"). Defendant, KEP Morrisville Realty LLC ("Defendant KEP"), has responded [DE-18], and Plaintiff Ridout has replied [DE-19]. The matter is now ripe for disposition.

## I. PROCEDURAL AND FACTUAL HISTORY

On September 10, 2008, Plaintiff Ridout filed a Complaint [DE-1] against Defendant KEP for recovery of ad valorem taxes owed as stipulated in the Contract executed between said parties. Plaintiff Ridout alleges that Defendant KEP breached the terms of contract failing to pay these ad valorem taxes and seeks a declaratory judgment enforcing the terms of the Contract. Subsequently, Plaintiff Ridout filed an Amended Complaint [DE-3] against Defendant KEP alleging the same cause of action, but including as exhibits the original Contract and First and Second Amendment to the Contract, and Letter by Edward Kalikow, President of KEP.

On December 18, 2008, following the conclusion of discovery, Plaintiff Ridout filed a Motion for Summary Judgment [DE-13] and supporting memorandum [DE-14], arguing that no

genuine issues of material fact exist and that judgment as a matter of law in their favor is appropriate for both the breach of contract and declaratory judgment claims against Defendant KEP. Specifically, Plaintiff Ridout argues that the Contract unambiguously provides that KEP's obligation to pay Plaintiff Ridout's ad valorem taxes is to survive closing of the real estate transaction until the earlier of (i) the date of which Ridout sold the New Ridout Property, (ii) the date on which any tenant or occupant of the New Ridout Property opened for business, or (iii) ten (10) years from the date that the Shopping Center's anchor tenant opened for business. Because none of these conditions have occurred, Defendant KEP's failure to pay Plaintiff Ridout the ad valorem taxes for 2006, 2007 and 2008 and refusing to pay any taxes in the future constitutes a breach of the Contract. Plaintiff Ridout also seeks a declaratory judgment finding that Defendant KEP is obligated to pay to Plaintiff Ridout the ad valorem taxes for 2009 - 2015.

On January 27, 2009, Defendant KEP filed their Opposition [DE-18] to Plaintiff Ridout's Motion for Summary Judgment. Defendant KEP argues that Plaintiff Ridout breached the Contract by failing to make reasonable efforts to sell or lease the New Ridout Property. Therefore, Plaintiff Ridout's breach of the Contract relieves Defendant KEP of any obligations it may have had to pay the ad valorem taxes. Defendant KEP concedes that the Contract does not contain an express provision requiring Plaintiff Ridout to use his best efforts to sell or lease the New Ridout Property. However, Defendant KEP contends that Plaintiff Ridout's obligation to reasonably and in good faith attempt to lease or sell the New Ridout Property was an implied term in the Contract. Defendant KEP also argues that, because the Contract confers on Plaintiff Ridout discretionary power[1] affecting the rights of Defendant KEP, this discretion must be exercised in a reasonable manner based upon good faith and fair play. Defendant KEP presents

---
[1] KEP's reference to discretionary power is based on its argument that Ridout has an implied obligation to make reasonable efforts to sell or lease the New Ridout Property.

affidavits from Edward Kalikow, President of KEP, and W. Marvin Waldo, President of Retail Strategies of NC, Inc.,[2] to provide further corroborate their argument that the intention behind the Contract was for Plaintiff Ridout to make reasonable efforts to sell or lease the New Ridout Property.

On February 5, 2009, Plaintiff Ridout filed his Reply to Defendant KEP's Opposition [DE-19]. In reply, Plaintiff Ridout contends that the Contract is plain and unambiguous on its face, and contains no language whatsoever requiring him to sell or lease the New Ridout Property. Therefore, Plaintiff Ridout argues no such intent should be read into the Contract and the unambiguous Contract should be interpreted as a matter of law by the court. Moreover, the parol evidence rule prohibits the introduction of prior or contemporaneous agreements to the Contract, whether written or oral, to vary, add to, or contradict the terms of a written instrument intended to be the final integration of the transaction. Consequently, any evidence outside of the contract, specifically affidavits from Edward Kalikow and W. Marvin Waldo, should not be considered.

The record shows that the undisputed facts are as follows: In or around October 1998, KEP acquired property in Morrisville, North Carolina for the purpose of constructing a retail shopping center to be known as "Davis Commons." To complete the shopping center, Defendant KEP needed to acquire an adjacent parcel of land, which was owned by Plaintiff Ridout and his spouse, Peggy, as tenants by the entireties. On December 23, 2002, Plaintiff Ridout and Defendant KEP entered into a contract in which Plaintiff Ridout agreed to exchange the real

---

[2] Retail Strategies of NC, Inc. is a full service commercial real estate brokering company who assisted KEP in its negotiation with Ridout.

property he owned with his spouse ("New KEP Property"),[3] for real property owned by Defendant KEP, which was in close proximity to the new retail shopping center ("New Ridout Property").[4] The exchanging of the parcels allowed Defendant KEP to finalize its retail shopping center while Plaintiff Ridout and his spouse would acquire property that was set to increase substantially in value due to its location near the newly-developed shopping center.

As a part of the exchange, Defendant KEP agreed, pursuant to Paragraph 3(B) of the Contract, to pay all ad valorem taxes that Plaintiff Ridout was obligated to pay on the New KEP Property, New Ridout Property, and any single-family home that Plaintiff Ridout purchased as his primary residence to replace his existing residence on the New KEP Property, less an annual amount of nine hundred twenty seven dollars ($927.00). The Contract specifies that the obligation to pay Plaintiff Ridout's ad valorem taxes is to survive closing of the real estate transaction until the earlier of (i) the date of which Ridout sold the New Ridout Property, (ii) the date on which any tenant or occupant of the New Ridout Property opened for business, or (iii) ten (10) years from the date that the Shopping Center's anchor tenant opened for business. Finally, the Contract also included a merger clause entitled "Entire Agreement" which states:

> This Contract contains the entire agreement between the parties hereto and there are no representations, inducements, conditions, or other provisions other than those expressed herein. All understandings and agreements heretofore had between the parties are merged herein, which alone fully and completely express their understanding.

Amended Compl., Ex. 1, ¶ 19 [DE-3].

---

[3] New KEP Property consists of approximately 1.951 acres, located just east of the northeast intersection of Davis Drive and Morrisville-Carpenter Road, in Wake County, North Carolina.
[4] New Ridout Property consists of at least two (2) acres, net of right-of-way dedications and sidewalks, to be located at the northeast intersection of Davis Drive and Morrisville-Carpenter Road, in Wake County, North Carolina

4

After the Contract was originally agreed upon, both parties subsequently agreed to amend the Contract on two occasions. The first amendment to the Contract, which took place on July 17, 2003, specified that both Plaintiff Ridout and his spouse, Peggy, would conduct their own negotiations with Defendant KEP for their respective interest in the New KEP Property. Originally, Plaintiff Ridout represented to Defendant KEP that he had full authority convey the New KEP Property to Defendant KEP on behalf of his spouse. However, Defendant KEP later discovered that Plaintiff Ridout and his spouse had been separated for over 14 years and Plaintiff Ridout was not on good terms with Peggy. At the time of this amendment, Plaintiff Ridout executed the Contract with Defendant KEP for his interest in the New KEP Property. Peggy, Plaintiff Ridout's spouse, executed an Offer to Purchase and Agreement of Purchase and Sale of her interest in the New KEP Property on May 7, 2003. The second amendment to the Contract took place on December 1, 2004. Under this amendment, Plaintiff Ridout agreed to vacate and deliver to Defendant KEP possession of the New KEP Property on or before April 30, 2005. Upon vacating the property, Defendant KEP agreed to pay Plaintiff Ridout a sum of sixty thousand dollars ($60,000).

Pursuant to the terms of the Contract, in 2002, Defendant KEP paid ad valorem taxes in the amount of three hundred eighty three and 32/100 dollars ($383.32) to Plaintiff Ridout. In 2003, Defendant KEP paid Plaintiff Ridout One Thousand One Hundred Twenty and 13/100 Dollars ($1,120.13) in ad valorem taxes.[5] In 2005, Defendant KEP paid Plaintiff Ridout's ad valorem taxes with the exception of the pro-rated taxes on his new single family home purchased on October 12, 2005. On or about July 12, 2005, Defendant KEP closed on the New KEP

---

[5] No evidence is presented as to whether KEP paid Ridout any ad valorem taxes in 2004. In any case, Ridout is not seeking to recover ad valorem taxes for the year 2004.

5

Property. After closing, Defendant KEP refused to pay the ad valorem taxes for the 2006, 2007 and 2008 and has asserted that it does not intend to pay any further taxes.

## III. STANDARD OF REVIEW

The Plaintiff in this case has moved for summary judgment, arguing that there are no issues of material fact and that judgment as a matter of law is therefore appropriate. *See* FED. R. CIV. P. 56(c). The party seeking summary judgment bears the burden initially of coming forward and demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once the moving party has met its burden, the non-moving party then must come forward and demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In doing so, the party opposing summary judgment may not rest upon mere allegations or denials; rather, he must show specific facts showing there is a genuine issue for trial. *See Emmett v. Johnson*, 523 F.3d 291, 297 (4th Cir. 2008); *Anderson*, 377 U.S. at 245-52. Summary judgment is, therefore, appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

## IV. ANALYSIS

Plaintiff Ridout is moving for summary judgment as to both his breach of contract claim and his claim for declaratory judgment as to the enforceability of the Contract.

### A. Jurisdiction and Choice of Law

This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), which gives the court diversity of citizenship jurisdiction. A federal court exercising diversity jurisdiction under 28 U.S.C. § 1332 must apply the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). In North Carolina, the interpretation and construction of a contract is governed by the law of the place where the contract was formed. *See Tanglewood Land Co., Inc. v. Byrd*, 299 N.C. 260, 262 261 S.E.2d 655, 656 (1980); *Fast v. Gulley*, 271 N.C. 208, 211 155 S.E.2d. 507, 509 (1967) ("In interpreting a contract made outside of this State our courts long ago established the principle that the law of the country where the contract is made is the rule by which the validity of it, its exposition, and consequences are to be determined."). This rule of *lex loci contractus*, however, may be overcome by the presence of a choice-of-law provision in a contract. *Volvo Constr. Equip. North America, Inc. v. CLM Equip. Co.*, 386 F.3d 581, 601 (4th Cir. 2004)(citing *Bueltel v. Lumber Mut. Ins. Co.*, 134 N.C. App. 626, 518 S.E.2d 205, 209 (1999)).

In the instant case, the evidence does not clearly indicate where the contract was formed. However, the Contract has a choice-of-law provision titled "applicable law" which explicitly states that "[t]his Contract shall be governed by and construed in accordance with the laws of the state of North Carolina without regard to its conflicts of laws principles." Amended Compl., Ex. 1, ¶ 14 [DE-3]. Therefore, Plaintiff Ridout's Motion for Summary Judgment as to both his breach of contract claim and his claim for declaratory judgment must be decided pursuant to North Carolina law.

**B. Breach of Contract**

To prevail on a claim for breach of contract, the plaintiff's evidence must show that a valid contract existed between the parties, the defendant breached the terms of the contract, and damages resulted from the breach. *Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 10, 545 S.E.2d 745, 751 (2001). Here, there is no dispute as to the existence of a valid contract. Both Plaintiff Ridout and Defendant KEP agree that a valid contract exists for the exchange of the New Ridout Property and the New KEP Property. The main issue involves determining whether, under the Contract, Defendant Ridout breached by not paying Plaintiff Ridout's ad valorem taxes or whether Plaintiff Ridout had an implied obligation and therefore breached the Contract by not making reasonable efforts to sell, lease, or otherwise develop the New Ridout Property.

When the court is given the task of interpreting a contract, "its primary purpose is to ascertain the intention of the parties at the moment of its execution." *Lane v. Scarborough et al*, 284 N.C. 407, 409-410, 200 S.E.2d 622, 624 (1973) (citation omitted). To ascertain the parties' intent, the court may consider the "language used, the situation of the parties, and objects to be accomplished." *Briggs v. Mills, Inc.*, 251 N.C. 642, 644, 111 S.E.2d 841, 843 (1960). When a written contract is free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning. *Lane*, 240 N.C. at 410, 200 S.E.2d at 624. "Presumably the words which the parties select were deliberately chosen and are to be given their ordinary significance." *Briggs*, 251 N.C. at 644, 111 S.E.2d 843.

However, a contract may also encompass not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms

prevent such inclusion. *Shelton v. Duke University Health System, Inc.*, 179 N.C. App. 120, 123-124, 633 S.E.2d 113, 115 (2006) (citation omitted). The doctrine of implication of unexpressed terms has been succinctly stated as follows:

> Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. If it can be plainly seen from all the provisions of the instrument taken together that the obligation in question was within the contemplation of the parties when making their contract or is necessary to carry their intention into effect, the law will imply the obligation to enforce it. The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made. However, no meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions.

*Lane*, 284 N.C. at 411-412, 200 S.E.2d at 625. The court will be "prepared to imply a term if there arises from the language of the contract itself, and the circumstances under which it is entered into, an inference that the parties must have intended to the stipulation in question." *Id.* at 411, 200 S.E.2d at 624.

In *Gilmore v. Garner*, the court illustrated the application of this doctrine when it dealt with the issue of whether there can be an implication that a reference to "Railroad Retirement benefits" includes only the "divorced spouse annuity" available under the Railroad Retirement Act. 157 N.C.App. 664, 580 S.E.2d 15 (2003). The former wife alleged that the "Railroad Retirement benefits" refers to the husband's divisible "Railroad Retirement Benefits" while the Husband argues that the "Railroad Retirement benefits" refers only to the "divorced spouse annuity." *Id.* After examining the language of the separation agreement to determine the intent of the parties at the time they entered into the agreement, the court held that the "Railroad Retirement benefits" referred to the husband's divisible "Railroad Retirement Benefits" and not

9

solely the "divorced spouse annuity." *Id.* at 668, S.E.2d at 18 (2003). The court reasoned that because the former wife was eligible for "divorced spouse annuity" in complete absence of specific language in the separation agreement, interpreting "Railroad Retirement Benefits" as "divorced spouse annuity" would render the entire paragraph superfluous and without meaning. *Id.* The court further explained that because the separation agreement stated that the former wife would seek a percentage of retirement benefits at a later date, and not presently, indicates that retirement benefits were in reference to the husband's divisible "Railroad Retirement benefit" with the amount to be determined at the husband's retirement. *Id.* at 668, S.E.2d at 19 (2003).

Turning to the instant case, the subject matter and purpose of the Contract was to allow Defendant KEP to acquire property owned by Plaintiff Ridout in order to finalize the construction of its shopping center. In exchange, Defendant KEP conveyed property to Plaintiff Ridout expected to increase in value due to its close proximity to the new retail center. To encourage Plaintiff Ridout to agree to the transaction, Defendant KEP agreed to pay agreed to pay the ad valorem taxes less an annual amount of nine hundred twenty seven dollars ($927.00) until either (1) Plaintiff Ridout sold the property; (2) a tenant or occupant opened on Plaintiff Ridout's new property; (3) or ten (10) years from the date that the Shopping Center's anchor tenant opened for business.

In ascertaining the meaning and intention by the parties from the language of the Contract, the court can envision that KEP's intention in agreeing to pay the ad valorem taxes minus the annual amount of nine hundred twenty seven dollars ($927.00) was to help bridge the gap between what Ridout was paying for taxes on the New KEP Property and the taxes that Ridout would be liable for on the New Ridout Property, thereby, inducing Ridout to agree to the

exchange of the parcels. Furthermore, because the provision addressing the ad valorem taxes explicitly mentions three occurrences in which KEP would be relieved of its obligation to pay the ad valorem taxes, the court can also see that both parties had a mutual understanding that this tax obligation would not last forever and can be extinguished on the occurrence of the three aforementioned conditions.

Nonetheless, the court is unable to see that these provisions, taken together with the purpose and subject matter of the Contract, impose an implicit obligation on Ridout to make reasonable efforts to sell or lease the New Ridout Property. As stated above, the provision was aimed to help ease Plaintiff Ridout of the tax liability that may be incurred by the New Ridout Property because it's potential to increase substantially in value. Because the tax provision was further aimed to induce Plaintiff Ridout to agree to the exchange in the first place, Defendant KEP did not want to be burdened with this tax obligation if Plaintiff Ridout sold the New Ridout Property or was able to generate revenue from either the lease or development of this new property. However, to take conditions in which both parties agreed would lead to a termination of Defendant KEP's obligation to pay the ad valorem taxes and convert them into an implicit requirement on Plaintiff Ridout to carry out these conditions in order for the tax liability to be enforceable is a step that the court believes is illogical and, consequently, unable to take.[6]

---

[6] The court does take note of the "Use and Development of New Ridout Property" provision which states:

> Ridout shall use or consent to the use of the New Ridout Property, through the sale, lease, sublease or transfer of any interest therein, for any use permitted by the Town of Morrisville with the exception of gas and convenience stores. Except to the extent that KEP has herein expressly agreed to pay such costs, development of the New Ridout Property shall be at Ridout's sole cost and expenses, including the cost of preparing and seeking governmental approval of a site-specific site plan for the New Ridout Property.

11

Moreover, similar to the rationale manifested in *Gilmore*, to imply a prerequisite on Plaintiff Ridout to make reasonable efforts to sell, lease, or develop the New Ridout Property in order for Defendant KEP's obligation to pay the ad valorem taxes to stand would render the whole provision addressing the payment of ad valorem taxes superfluous and without meaning. The purpose behind the provision addressing the ad valorem taxes is to first explicitly obligate Defendant KEP to pay Plaintiff Ridout's ad valorem taxes less an annual amount of nine hundred twenty seven dollars ($927.00) and secondly, identify the occurrences which would release Defendant KEP of its obligations. To make an interpretation that Plaintiff Ridout is obligated to make reasonable efforts to sell, lease, or develop the New Ridout Property in order for Defendant KEP to be liable for Plaintiff Ridout's ad valorem taxes would be completely inconsistent with the language and purpose of the provision and would render the ad valorem tax provision meaningless.

In reaching this conclusion, the court has not considered the affidavits of Edward Kalikow and W. Marvin Waldo. A final agreement which defines and declares the intention and rights of the parties cannot be modified or corrected by proof of any preliminary negotiations or agreement, nor is it permissible to show how the parties understood the transaction in order to explain or qualify what is the final writing, in the absence of an allegation of fraud or mistake or unless the terms of the instrument itself are ambiguous and require explanation. *Root v. Allen*,

---

Amended Compl., Ex. 1, ¶ 3 [DE-3]. Arguably, this clause, when combined with the other provisions in the Contract, can be interpreted to impose an explicit obligation on Ridout to make efforts to sell, lease, or transfer the New Ridout Property. However, both parties agree (KEP concedes) that there are no explicit provisions in the Contract that obligate Ridout to sell or lease the New Ridout Property. Consequently, given that our task is to determine the intentions of the parties at the time the contract is formed, the court finds that this clause was not intended to impose any obligation on Ridout to sell, lease, or transfer the New Ridout Property.

12

272 N.C. 580, 587, 158 S.E.2d 829, 835 (1968). Its terms may not be contradicted by parol or extrinsic evidence, and it is presumed that all prior negotiations are merged into the written instrument. *Id.* Here, Defendant KEP does not argue that the Contract is ambiguous nor does it make any allegations of fraud or mistake. Furthermore, the Contract includes a merger clause entitled "Entire Agreement" which states:

> This Contract contains the entire agreement between the parties hereto and there are no representations, inducements, conditions, or other provisions other than those expressed herein. All understandings and agreements heretofore had between the parties are merged herein, which alone fully and completely express their understanding.

Amended Compl., Ex. 1, ¶ 19 [DE-3]. Accordingly, the court is unable consider any parol evidence in interpreting the meaning of this Contract.

Finally, the court finds unpersuasive Defendant KEP's argument that Plaintiff Ridout had discretionary power in the Contract which required exercise of discretion based upon good faith and fair play unpersuasive. Once again, the Court finds that there is no implied obligation in the Contract which requires Plaintiff Ridout to make reasonable efforts to sell or lease the New Ridout Property. Without this implied obligation, Plaintiff Ridout has no discretion that must be exercised in a reasonable manner based upon good faith and fair play.

Accordingly, the court finds that Plaintiff Ridout was under no obligation to make reasonable efforts to sell, lease, or develop the New Ridout Property under the Contract. As a result, Defendant KEP breached the Contract by failing to pay Plaintiff Ridout's ad valorem taxes less an annual amount of nine hundred twenty seven dollars ($927.00) for the years 2006, 2007 and 2008.

### C. Declaratory Judgment

Plaintiff Ridout also seeks a declaratory judgment finding Defendant KEP liable for the ad valorem taxes of the New Ridout Property minus an annual amount of Nine Hundred Twenty Seven dollars ($927.00) for the years 2006-2015. The purpose of a declaratory judgment is to "afford litigants an early opportunity to resolve their federal disputes so as to avoid the threat of impending litigation." *See Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1172 (9th Cir. 2002). The declaratory judgment "allows controversies to be settled before they mature into full-fledged violations of law or breaches of duty." *See Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

Here, because the court today grants summary judgment in favor of Plaintiff Ridout on their breach of contract claim, Plaintiff Ridout is entitled to recover the ad valorem taxes owed for the years 2006, 2007, and 2008. For years 2009 and 2010, Plaintiff Ridout shall provide the court with confirmation of its continued ownership of the New Ridout Property and that it has not leased this parcel to tenants which would relieve Defendant KEP of its obligation to pay ad valorem for these specified years.

Finally, Plaintiff Ridout seeks pre-judgment and post-judgment interest, attorneys' fees, and costs. Plaintiff Ridout shall submit their proposed calculation on these items to the court no later than December 18, 2010. Plaintiff Ridout shall state with particularity his reasoning with respect to prejudgment and post-judgment interest, attorneys' fees, and costs with proper North Carolina authority, where applicable. Defendant KEP may file objections to the proposed calculations no later than January 18, 2011. If Defendant KEP objects to Plaintiff Ridout's calculations, Defendant KEP shall state with particularity its reasoning with respect to each item to which it objects and shall support any objection with proper North Carolina authority, where

applicable. Plaintiff Ridout may file a reply not later than January 31, 2011. The court will enter an appropriate order and judgment in due course.

## V. CONCLUSION

For the foregoing reasons, Plaintiff Ridout's Motion for Summary Judgment [DE-13] is ALLOWED. It is hereby ORDERED, ADJUDGED, AND DECREED that:

1. Defendant KEP Morrisville Realty LLC is obligated to pay Plaintiff Clarence B. Ridout the ad valorem taxes less an annual amount of nine hundred twenty seven dollars ($927.00) for the years 2006, 2007, 2008.

2. For years 2009 and 2010, Plaintiff Clarence B. Ridout shall provide the court with confirmation of its continued ownership of the New Ridout Property and that it has not leased this parcel to tenants which would relieve Defendant KEP of its obligation to pay ad valorem for these specified years.

3. Plaintiff Clarence B. Ridout have and recover of Defendant KEP pre-judgment and post-judgment interest, attorneys' fees, and costs. Plaintiff Clarence B. Ridout shall submit their proposed calculation on these items to the court no later than December 18, 2010. Defendant KEP may file objections to the proposed calculations no later than January 18, 2011. Plaintiff Ridout may file a reply not later than January 31, 2011.

SO ORDERED.

This the 18th day of November, 2010.

*[signature]*

JAMES C. FOX
Senior United States District Judge